# STATE OF MICHIGAN

# COURT OF APPEALS

---

LJEKA GOJCEVIC, DJUSTA GOJCEVIC, and
ANTON GOJCAJ,

      Plaintiffs-Appellants,

v

U.S. BANK NATIONAL ASSOCIATION,

      Defendant-Appellee.

UNPUBLISHED
December 13, 2016

No.   328943
Macomb Circuit Court
LC No.   13-004296-CK

---

Before:  JANSEN, P.J., and CAVANAGH and BOONSTRA, JJ.

PER CURIAM.

Plaintiffs appeal by right the order of the trial court granting defendant's motion for summary disposition pursuant to MCR 2.116(C)(10) and dismissing plaintiffs' case.  We affirm.

## I.  PERTINENT FACTS AND PROCEDURAL HISTORY

Plaintiffs were the owners of real property in Macomb Township.  In 2001, plaintiffs executed a mortgage on the property in favor of Mortgage Electronic Registration Systems, Inc. (MERS) as security for a loan of $190,000.  In 2009, MERS assigned its interest in the mortgage to defendant.

In 2010, plaintiffs defaulted on the mortgage by nonpayment.  Plaintiffs applied for a loan modification with defendant, and were accepted into defendant's Home Affordable Modification Program on a trial basis in July.  Plaintiffs then made three payments of $882.59 to defendant between July 2010 and November 1, 2010.  Plaintiffs made no payments after November 1, 2010.

Defendant's Loss Mitigation notes indicate that at least one of plaintiffs made several telephone contacts with defendant, in which defendant advised that plaintiffs should continue to make trial plan payments while awaiting the receipt of loan modification documents.

Plaintiffs executed a Home Affordable Modification Agreement ("the Agreement") on June 21, 2011.  Relevant to this appeal, the Agreement contained the following language:

I understand that after I sign and return two copies of this Agreement to the Lender, the Lender will send me a signed copy of this Agreement.  This

-1-

Agreement will not take effect unless the preconditions set forth in Section 2 have been satisfied.

**1.       My Representations and Covenants.**   I certify, represent to lender, covenant and agree:

      A.   I am experiencing a financial hardship, and as a result (i) I am in default under the Loan Documents or my default is imminent . . . .

             *   *   *

      G.   I have made or will make all payments required under a trial period plan.

**2.       Acknowledgments and Preconditions to Modification.**   I understand and acknowledge that:

             *   *   *

      B.   I understand that the Loan Documents will not be modified unless and until (i) the Lender accepts this agreement by signing and returning a copy of it to me, and (ii) the Modification Effective Date (as defined in Section 3) has occurred.

**3.       The Modification.**   If my representations in Section 1 continue to be true in all material respects and all preconditions to the modification set forth in Section 2 have been met, the Loan Documents will become automatically modified on **NOVEMBER 1, 2010** (the "Modification Effective Date") and all unpaid late charges that remain unpaid will be waived.   I understand that if I have failed to make any payments as a precondition to this modification under a workout plan or trial period plan, this modification will not take effect.   The first modified payment will be due on **November 1, 2010.**

The Agreement provided that the monthly payment amount, beginning November 1, 2010, would be $882.59, but could be adjusted periodically in accordance with applicable law governing escrow payments.

Plaintiffs continued to be in default on the mortgage.   Although plaintiffs assert in their brief on appeal that they made one payment in June 2011 in the amount of $882.59, they do not dispute that they made no other payments.   Plaintiffs were informed in October 2011 that they were in default on their mortgage and that the mortgage had been referred for foreclosure.   On October 13, 2011, plaintiffs were informed that they could get out of default by making 11 missed payments, plus assorted fees, totaling $10,641.79.

Plaintiffs requested mediation regarding the foreclosure pursuant to the now-repealed MCL 600.3205.   Mediation was scheduled for December 2, 2011; however, plaintiffs did not attend the mediation meeting.   A sheriff's sale was scheduled for February 2, 2012, but was adjourned after plaintiff Ljeka Gojcevic filed for Chapter 13 bankruptcy.   The bankruptcy was

ultimately terminated unsuccessfully on June 26, 2012. The sheriff's sale was set for January 4, 2013, but was delayed again after plaintiffs filed an action with the trial court to stop the sale. On August 29, 2013, the action was dismissed for lack of progress. The foreclosure process again resumed.

On October 25, 2013, plaintiffs filed the instant suit, seeking injunctive relief to stop the sheriff's sale, and alleging claims for (1) breach of the loan modification agreement, (2) intentional interference with plaintiffs' right of quiet enjoyment of the property, (3) wrongful foreclosure, (4) intentional infliction of emotional distress and (5) quiet title. The trial court entered an injunction halting the sheriff's sale pending the outcome of the litigation. Defendant moved for summary disposition in March of 2014. Plaintiffs responded with their own motion for partial summary disposition on April 21, 2014[1]. A hearing was held on defendant's motion that same day. However, the trial court's decision on both motions was held in abeyance pending an attempt by the parties to settle the case using a private facilitator, which effort was unsuccessful. The trial court issued its opinion and order on June 19, 2015, granting summary disposition in favor of defendant, pursuant to MCR 2.116(C)(10), on all of plaintiffs' claims, denying plaintiff's motion for partial summary disposition, dismissing plaintiffs' case, and awarding sanctions for asserting a frivolous claim (relative to Count II of plaintiffs' complaint— interference with right to quiet enjoyment). The trial court denied plaintiffs' motion for reconsideration.

Plaintiffs thereafter filed a motion with the trial court to hold defendant in contempt of court and to stay the foreclosure proceedings pending the appeal, arguing that defendants had violated the court rules by proceeding with the foreclosure proceedings before the expiration of the 21-day period that follows entry of judgment as provided for in MCR 2.614(A)(1). The trial court denied plaintiffs' motion on August 19, 2015. Plaintiffs filed their claim of appeal with this Court, seeking to appeal both the August 19, 2015 order and the trial courts' earlier order of summary disposition. This Court dismissed the portion of the claim of appeal related to the August 19, 2015 order, on the grounds that it was not a final order subject to appeal by right.[2] Plaintiffs then moved this Court to stay the proceedings below pending resolution on appeal of the remaining summary disposition issues, which motion this Court denied.[3]

---

[1] It is not clear what issues plaintiffs were reserving for trial, although plaintiffs' motion for summary disposition did not make explicit reference to their intentional infliction of emotional distress claim.

[2] *Gojcevic v US Bank Nat'l Assoc NA*, unpublished order of the Court of Appeals, issued August 25, 2015 (Docket No. 328943).

[3] *Gojcevic v US Bank Nat'l Assoc NA*, unpublished order of the Court of Appeals, issued October 29, 2015 (Docket No. 328943).

## II. SUMMARY DISPOSITION STANDARD OF REVIEW

We review de novo a trial court's decision on a motion for summary disposition. *Moser v Detroit*, 284 Mich App 536, 538; 772 NW2d 823 (2009). Summary disposition is proper under MCR 2.116(C)(10) if "there is no genuine issue as to any material fact, and the moving party is entitled to judgment . . . as a matter of law." "A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ." *West v Gen Motors Corp*, 469 Mich 177, 183; 665 NW2d 468 (2003). We consider the affidavits, pleadings, depositions, admissions, and other documentary evidence in the light most favorable to the nonmoving party. *Liparoto Constr, Inc v Gen Shale Brick, Inc*, 284 Mich App 25, 29; 772 NW2d 801 (2009). All reasonable inferences are to be drawn in favor of the nonmovant, *Dextrom v Wexford County*, 287 Mich App 406, 415; 789 NW2d 211 (2010). If it appears that the opposing party is entitled to judgment, the court may render judgment in favor of the opposing party. MCR 2.116(I)(2); *Bd of Trustees of Policemen & Firemen Retirement Sys v Detroit*, 270 Mich App 74, 77-78; 714 NW2d 658 (2006). A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds could differ. *Allison v AEW Capital Mgt, LLP*, 481 Mich 419, 425; 751 NW2d 8 (2008).

## III. BREACH OF THE AGREEMENT

Plaintiffs first argue that defendant breached the Agreement by treating plaintiffs as though they were in default and by improperly proceeding to foreclosure. We disagree. In addition to reviewing the trial court's grant of summary disposition de novo, the proper interpretation of a contract is a question of law that we review de novo. *Coates v Bastian Brothers, Inc*, 276 Mich App 498, 503; 741 NW2d 539 (2007).

Contractual language is to be interpreted according to its plain and ordinary meaning; if the language of a contract is unambiguous, we are to construe and enforce the contract as written. *Id*. Here, plaintiffs argue that the Agreement is at the very least ambiguous, because the Modification Effective Date had already passed by the time the Agreement was executed, that it was not the intent of the parties that plaintiffs enter into a contract that would immediately place them in default, and further that they received no benefit from the Agreement as construed by the trial court. We disagree.

First, nothing in the Agreement indicates that plaintiffs were relieved of their obligation to make monthly payments on the debt secured by the mortgage, or explicitly obligates defendant to provide the Agreement to plaintiffs for execution before the Modification Effective Date. The Agreement explicitly contemplates that the modification will take effect on the Modification Effective Date. It does not state that the Agreement must be executed before the Modification Effective Date in order to take effect. Nor is it required that plaintiffs not be in default before executing the Agreement—to the contrary, plaintiffs explicitly represented in Section 1 of the Agreement, as a precondition to the Agreement taking effect, that they were either in default or nearing default. That section also contemplates that plaintiffs may not have made all of their trial period payments, in which case they represented that they "will make" those payments in the future.

Further, as the trial court pointed out, there is nothing absurd or impossible about plaintiffs' entering into a modification agreement that would immediately place them in default. Under the original loan documents, plaintiffs *already were* in default from nonpayment. By executing the Agreement, plaintiffs received the benefit of a lower interest rate and monthly payments as well as a waiver of late charges. The fact that they continued to be in default does not mean they received no benefit from the Agreement, as they were given the opportunity to get out of default by making their missed monthly payments at a new, lower amount, and to move forward making lower payments at a lower rate of interest. Although it was indeed impossible for plaintiffs to avoid default simply by making a timely monthly payment upon executing the Agreement on June 21, 2011, that impossibility arose simply because plaintiffs had made no payments while waiting to execute the Agreement, despite never having been told not to continue to make payments under the original contract, and in fact despite defendant's advice that they continue to make payments at the trial period rate[4] while waiting to sign the Agreement. Plaintiffs' predicament thus is one of their own making.

Finally, we decline to find that defendant breached the Agreement by requiring a monthly payment of $891.41 rather than the $882.59 recited in the Agreement, as the Agreement explicitly states that the payment may be recalculated according to escrow laws, and plaintiffs have presented no evidence that defendant improperly calculated this new payment of approximately ten dollars more per month (which is still substantially lower than the original $1,200+ payment required under the original loan documents). In sum, the trial court did not err by finding the Agreement to be unambiguous, *Coates*, 276 Mich App at 503, or by determining that no genuine issue of material fact existed on this claim, *West v Gen Motors Corp*, 469 Mich at 183.

IV. PROMISSORY ESTOPPEL

Plaintiffs next argue that the trial court improperly granted summary disposition to defendant, because defendant should have been estopped from defaulting plaintiffs as of the Modification Effective Date. We disagree. The applicability of an equitable doctrine is reviewed de novo on appeal. See *Knight v Northpointe Bank*, 300 Mich App 109, 113; 832 NW2d 439 (2013).

Promissory estoppel is "a distinct cause of action." *Novak v Nationwide Mut Ins Co*, 235 Mich App 675, 686; 599 NW2d 546 (1999). Plaintiffs did not plead a claim for promissory estoppel in their complaint, nor did they seek to amend their complaint to add such a claim.

Further, to the extent that plaintiff argued the elements of promissory estoppel before the trial court, the elements of promissory estoppel were not established.

---

[4] As stated, the trial payment amount appears from the record to have been $882.59. Plaintiffs made payments in that amount for three months following their acceptance into the loan modification program, and provide no explanation for why they did not continue making payments in that amount after November 1, 2010, especially when advised to do so by defendant.

The elements of promissory estoppel are (1) a promise, (2) that the promisor should reasonably have expected to induce action of a definite and substantial character on the part of the promisee, and (3) that in fact produced reliance or forbearance of that nature in circumstances such that the promise must be enforced if injustice is to be avoided. [*Id.* at 686-687.]

Here, plaintiffs appear to argue that defendant made promises to induce them into not making payments on their mortgage until they received the loan modification documents and executed the Agreement. This argument is contradicted by the record. Although plaintiffs argue that they "made over a hundred telephone calls to Appellee and no one listened," the record indicates that, at least in January 2011, plaintiffs were advised to continue making payments while awaiting receipt of the loan modification documents. Further, even if defendant had ignored plaintiffs, there is no evidence of any affirmative statement by defendant that could be interpreted as telling plaintiffs not to make payments on the mortgage while awaiting the loan modification documents. Finally, there is no record evidence that defendant promised to provide the loan modification documents by November 1, 2010, or that, even if such a promise was made, it was made to induce plaintiffs *not* to make payments until they received the documents. We conclude that the trial court's failure to recognize a claim for promissory estoppel did not render its grant of summary disposition erroneous. *Id.*; *West v Gen Motors Corp*, 469 Mich at 183.

## V. QUIET TITLE

Plaintiffs next argue that the trial court erred by granting summary disposition in favor of defendant on their quiet title claim. Again, we disagree. The purpose of a quiet title action is to determine the superior right of title amongst parties claiming an interest in real property. *Beach v Twp of Lima*, 489 Mich 99, 102; 802 NW2d 1 (2011). This claim simply has no applicability to a defaulting mortgagor who claims that a mortgagee has wrongfully foreclosed on a property. There is no dispute that plaintiffs hold title to the subject property, subject to the mortgage interest held by defendant. Plaintiffs do not argue that defendant does not possess a mortgage interest in the property, and their arguments that defendant has wrongfully foreclosed and breached the Agreement are better addressed in other claims. The trial court did not err by granting summary disposition to defendant on this claim. *West v Gen Motors Corp*, 469 Mich at 183.

## VI. WRONGFUL FORECLOSURE, INTERFERENCE WITH RIGHT TO QUIET ENJOYMENT, INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

With regard to their remaining claims, plaintiffs make an omnibus argument; essentially, plaintiffs contend that the trial court erred by dismissing all of these claims because defendant acted in a malicious or grossly negligent manner in delivering the loan modification documents to plaintiffs after the Modification Effective Date had passed, in allegedly ignoring plaintiffs' repeated attempts to contact defendant about the loan modification, and in seeking foreclosure on the property. We disagree. We have substantially discussed many of these arguments above, and only add that the record is devoid of any evidence that would support plaintiffs' contention that defendant acted willfully and recklessly by foreclosing on the property while ignoring plaintiffs' attempts to contact defendant. The Loss Mitigation Notes introduced at trial indicate

that there were numerous contacts between plaintiffs and defendant, including at least two separate occasions when plaintiffs were advised to continue making payments while awaiting the loan modification documents. Further, the mere fact that the Agreement was finalized months after the Modification Effective Date, while perhaps irregular, did not deprive plaintiffs of any benefit, for the reasons discussed above. We therefore conclude that the trial court did not err by dismissing all of these claims on the grounds that plaintiffs failed to establish a genuine issue of material fact with regard to their elements. *West v Gen Motors Corp*, 469 Mich at 183.

Further, with regard to Count II (intentional breach of the right to quiet enjoyment), we conclude that the trial court did not clearly err by imposing sanctions for a frivolous claim pursuant to MCR 2.114(F) and MCL 600.2591. We review a trial court's finding of frivolousness for clear error. See *Kitchen v Kitchen*, 465 Mich 654, 661; 641 NW2d 245 (2002).

Whether a claim is frivolous within the meaning of MCR 2.114(F) and MCL § 600.2591 depends on the facts of the case. MCL 600.2591(3) defines "frivolous" as follows:

(a) "Frivolous" means that at least 1 of the following conditions is met:

(i) The party's primary purpose in initiating the action or asserting the defense was to harass, embarrass, or injure the prevailing party.

(ii) The party had no reasonable basis to believe that the facts underlying that party's legal position were in fact true.

(iii) The party's legal position was devoid of arguable legal merit. [*Id*. at 662.]

Here, plaintiffs' claim for breach of their right to quiet enjoyment was devoid of arguable legal merit. "[T]he covenant of quiet enjoyment is breached only when *the landlord* obstructs, interferes with, or takes away from *the tenant* in a substantial degree the beneficial use of *the leasehold*." *Slattery v Madiol*, 257 Mich App 242, 258; 668 NW2d 154 (2003) (quotation marks and citations omitted) (emphases added). Plaintiffs have provided this Court with no authority, and this Court has found none, for the application of this legal theory to a foreclosure on a mortgage. We therefore conclude the trial court did not clearly err by awarding sanctions relative to Count II of plaintiffs' complaint. *Kitchen*, 465 Mich at 661.

VII. "FACILITATION/BIAS"

Plaintiffs next make an argument, which they entitle "Facilitation/Bias," that in making its ruling the trial court improperly relied on statements from the private facilitator. We are unable to find any evidentiary support for this assertion in the record provided to this Court, nor do plaintiffs specify when or where any statements were made by the facilitator to the trial court or what the statements supposedly were. The transcripts and the trial court's orders do not refer to any communications or reports from the facilitator. Parties may not leave it to this Court to search for the factual basis to sustain their position. *Begin v Mich Bell Tel Co*, 284 Mich App 581, 590; 773 NW2d 271 (2009), overruled in part on other grounds in *Admire v Auto-Owners*

-7-

*Ins Co*, 494 Mich 10; 831 NW2d 849 (2013). We therefore decline to further address plaintiffs' argument relative to this claim.

VIII. VIOLATION OF MCR 2.614

Finally, plaintiffs allege that the trial court erred by denying their post-summary disposition motion to hold defendant in contempt of court for violating MCR 2.614. As stated in our August 25, 2015 order,[5] this issue is not properly before the Court, and we decline to address it further.

Affirmed. As the prevailing party, defendant may tax costs. MCR 7.219(A).

/s/ Kathleen Jansen
/s/ Mark J. Cavanagh
/s/ Mark T. Boonstra

---

[5] *Gojcevic v US Bank Nat'l Assoc NA*, unpublished order of the Court of Appeals, issued August 25, 2015 (Docket No. 328943).